J-A10011-24

2024 PA Super 113

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY W. CARVER | : | No. 1868 EDA 2023 |

Appeal from the Order Entered June 26, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005962-2022

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

OPINION BY PANELLA, P.J.E.:                    **FILED MAY 31, 2024**

The Commonwealth of Pennsylvania appeals[1] from the Philadelphia County Court of Common Pleas' order granting Jerry W. Carver's motion to suppress evidence obtained pursuant to a search of his vehicle. After careful review of the record, we reverse and remand for further proceedings.

The suppression court summarized its findings of fact leading to the court's decision to grant the suppression motion as follows:

> Trooper Mark Salerno testified that he has ten years of experience with the Pennsylvania State Police .... He has conducted several hundred car stops during his career. Around a third of those stops were for firearms and narcotics.... [On July 26], 2022, around 6:30 PM he was assigned on patrol on a Trigger Lock Detail. Operation Trigger Lock was an initiative to help patrol high crime

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In accordance with Pa.R.A.P. 311(d), the Commonwealth certified that the suppression order has substantially handicapped its prosecution of the case. ***See Commonwealth v. James***, 69 A.3d 180, 185 (Pa. 2013).

areas based on the amount of shootings and violence. He's in the South Philadelphia area [with his partner]. He originally came to that area, 7th and Ritner, because a shooting occurred about thirty minutes before. The shooting was around a half a mile away from where the stop was. There was nothing at all to indicate that the vehicle was at all involved in the shooting. [Trooper Salerno] saw a dark gray Jeep Cherokee that had heavy window tinting on all windows with a Florida registration tag. It was unusual to the trooper because it was a rental and the front window tinting is not allowed in Pennsylvania. The license was ran [sic] after the tint was observed and came back to a rental company. [Trooper Salerno was] [u]nsure if the tinting was illegal in Florida. They were about to initiate the stop and the vehicle made a right turn. No turn signal was used. It pulled out onto the crosswalk at 10th and Oregon. Trooper Salerno pulled in behind the vehicle and activated lights. The vehicle backed up and then it stopped. [Trooper Salerno] approached the driver's side. His partner approached the passenger's side. [Carver] rolled the windows down and he looked back at the trooper. [Trooper Salerno] testified that [Carver]'s demeanor was very nervous and so the car was pulled. He was sweating, his hands were shaking. He was compliant with all of his paperwork. He answered questions and stated that he was on his way to get food. There was no mention of any specific affirmative movements until later when he moved forward when asked about a firearm. He handed the documents to the trooper and the trooper can smell marijuana coming from the vehicle. [Carver] stated that he had recently smoked and after that someone else had smoked. The trooper forgot the exact order when he was testifying. Maybe there was a small amount or there wasn't a small amount of marijuana in the car. The trooper was not concerned about his personal safety at that point in time. [Trooper Salerno] asked [Carver] if he could confirm that there was anything else illegal in the vehicle. [Carver] initially seemed to allow the search of the vehicle and consented. [Trooper Salerno] asked [Carver] if there were any weapons or firearms. [Carver] leaned forward and said no. At that point there were red flags for safety concerns [i]n the trooper[']s mind [and] he asked [Carver] to step out of that vehicle. At that point the trooper was not going to search the vehicle. [Carver] was escorted to the rear. At that point the officer did a safety pat down to check for weapons. He felt currency in one pocket and immediately felt the firearm as he patted him down -- his hand went around the handle of the firearm and it was immediately recognizable as a firearm. []Carver was immediately secured in handcuffs. [The firearm] was

removed from his waistband and made safe and [secure]. Trooper called for a tow to police barracks. A safety frisk was done on the vehicle. Nothing else was removed. A search warrant was applied for and granted. In the front seat there was a large amount of heroin, cocaine, money and an extended magazine. There is a video of the encounter placed on the dash cam. [Carver] also stated that he was on parole during the conversation before [Carver] was taken out of the car.

Trial Court Opinion, 9/11/23, at 1-2 (citing N.T., 6/5/23, at 33-37).

Following Carver's arrest, the Commonwealth charged Carver with violations of the Uniform Firearms Act,[2] possession with intent to distribute, and related offenses. Carver filed a pretrial motion to suppress in which he argued the police did not have reasonable suspicion or probable cause to stop his vehicle or to search his vehicle and person. *See* Motion To Suppress, 1/13/23.

On June 5, 2023, the trial court held a suppression hearing during which the Commonwealth presented the testimony of Trooper Salerno. After taking the matter under advisement, the trial court granted the motion to suppress. The Commonwealth filed a timely notice of appeal, and now raises the following claim for our review:

> Did the [suppression] court err by suppressing evidence discovered as a result of a valid protective frisk on the ground that the officer had purportedly failed to express a subjective concern for his safety when testifying at the suppression hearing.

Appellant's Brief, at 3.

---

[2] 18 Pa.C.S.A. §§ 6101-6127.

When this Court reviews a Commonwealth appeal from an order granting suppression, as we are tasked to do here, we may only consider the evidence produced at the suppression hearing; we may review only the evidence which comes from the defendant's witnesses, along with the Commonwealth's evidence which remains uncontradicted. **See Commonwealth v. Barr**, 266 A.3d 25, 29 (Pa. 2021). We must determine, in the first instance, whether the suppression court's factual findings are supported by the record and if they are, we are bound by those findings. **See id.** We must also keep in mind that the suppression court, as fact-finder, has the exclusive ability to pass on the credibility of witnesses. **See Commonwealth v. Fudge**, 213 A.3d 321, 326 (Pa. Super. 2019). Therefore, "we will not disturb a suppression court's credibility determinations absent a clear and manifest error." **Id.** (citation omitted).

Here, the record supports the suppression court's factual findings as set forth at the suppression hearing. However, unlike the deference we give to the suppression court's factual and credibility findings, "we [have] *de novo* review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010) (citation omitted). Accordingly, we must determine whether the legal conclusions the suppression court drew from its factual findings are correct. **See Barr**, 266 A.3d at 39.

Neither side disputes that Carver was subject to a valid traffic stop, *i.e.*, investigative detention, due to Carver's tinted windows and failure to use a

turn signal. **See** Appellee's Brief, at 9; Commonwealth's Brief, at 9. Further, the parties agree that the frisk at issue constituted a protective weapons search, or **Terry** frisk.[3] **See** Appellee's Brief, at 9-10; Commonwealth's Brief, at 9. Therefore, as we explain below, our focus is whether the frisk occurred during the initial traffic stop. Furthermore, if it did, were "the facts available to the officer at the moment of the [intrusion]" sufficient "to warrant a man of reasonable caution in the belief that the action taken was appropriate." **Commonwealth v. Griffin**, 954 A.2d 648, 651 (Pa. Super. 2008) (citation and internal quotation marks omitted; brackets in original). We will proceed to answer those questions.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV. Similarly, the Pennsylvania Constitution assures citizens of our Commonwealth that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures…." Pa. Const. art. I, § 8.

Additionally, "[t]he reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." **Commonwealth v. Fleet**, 114 A.3d 840, 844 (Pa.

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

Super. 2015) (citation omitted). One such government intrusion that has been recognized as an acceptable interaction between law enforcement and citizens is an investigative detention, otherwise known as a *Terry* stop and frisk.

A *Terry* stop permits an officer to briefly detain a citizen for investigatory purposes if the officer has "reasonable suspicion based upon specific and articulable facts, that criminal activity is afoot." ***Commonwealth v. Stevenson***, 894 A.2d 759, 771 (Pa. Super. 2006) (citation omitted). If at any point during this investigatory detention, an "officer believes, based on specific and articulable facts, that the individual is armed and dangerous" the officer may perform a *Terry* frisk. *Id*. at 772 (citation omitted). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." ***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011) (citation omitted). "The fundamental inquiry" in reviewing the officer's decision "is an objective one," utilizing "a totality of the circumstances test." ***Griffin***, 954 A.2d at 651 (citations omitted).

Here, the suppression court explained that it granted Carver's motion to suppress because the trooper did not have a reasonable suspicion to conduct a *Terry* search. ***See*** Suppression Court Opinion, 9/11/23, at 4. Accordingly, the court found suppression was proper because the warrant to search Carver's vehicle was obtained based on the evidence recovered during the illegal search.

The court put its reasons for suppression on the record as follows:

> The motion to suppress was held under advisement. [Carver] submitted case law. I didn't get any case law follow-up from the Commonwealth.
>
> I reviewed the cases and I got to say this is – it's a tricky one. I was kind of waffling on what I'm going to do which means that one of you will appeal it and it will probably come back your way; which is just fine.
>
> But, we already stated the findings of fact on the record and I just want to reiterate that the trooper testified credibly. There was no issues with Trooper [Salerno]'s testimony.
>
> But, I will say this, at no point in time, though he did say there was a red flag when he felt that he was reaching forward, at no point in time did the trooper say that he was concerned that [Carver] might be armed and dangerous.
>
> If at any point in time he said I was worried that he was armed and dangerous I would have absolutely denied this motion to suppress. But, they need to actually have something, some concern about him being armed and dangerous and this is someone that has good instincts. He was right, there was a gun on him.
>
> But, the fact that he didn't say I was concerned that he was armed and dangerous is why I'm going to grant the motion to suppress.
>
> But, for that, the other factors were there present. He did an excellent policing but his bravery is simply why I'm granting this motion.

N.T., 6/26/23, at 6-7.

It is clear from the suppression court's comments, which highlighted Trooper Salerno's "bravery" and focused on his failure to express a subjective concern for his safety after-the-fact, that the suppression court applied the wrong standard to determine whether Trooper Salerno had the requisite

reasonable suspicion to perform the protective frisk. "The relevant inquiry … is not the officers' subjective beliefs at any given time but the objective reasonableness of the search under the totality of the circumstances." ***Commonwealth v. Watley***, 153 A.3d 1034, 1045 (Pa. Super. 2016) (citation omitted). Therefore, we must analyze whether Trooper Salerno had reasonable suspicion to perform a protective frisk under the correct standard— whether the officer held an objectively reasonable belief that the suspect may have been armed and dangerous.

When assessing the reasonableness of an officer's decision to frisk an individual during an investigatory detention, we are not permitted to consider an officer's "unparticularized suspicion or hunch," but rather we must consider "the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." ***Stevenson***, 894 A.2d at 772 (citations and internal quotation marks omitted). Further, "common sense concerns" guide the inquiry and "give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." ***Id*** (emphasis and citation omitted).

Here, the record establishes that Trooper Salerno immediately noted that, after initiating the traffic stop, Carver was very nervous, sweating and his hands were shaking. Carver complied with the trooper's request for his information. However, when asked if there were any weapons in the car, Carver leaned forward and appeared nervous again, triggering Trooper

Salerno's concerns. Based upon this behavior and Trooper Salerno's experience and knowledge of the crime in the area, he believed Carver to be concealing a weapon. Trooper Salerno conducted a frisk and recovered a firearm.

Viewing the totality of the circumstances, we find that Trooper Salerno's description of Carver's nervous behavior during the course of a valid traffic stop, coupled with his furtive movements in leaning forward, and seemingly concealing an object, justified Trooper Salerno's reasonable suspicion that Carver was armed and dangerous. **See Commonwealth v. Wilson**, 927 A.2d 279, 284-285 (Pa. Super. 2007) (finding that extreme nervousness and furtive movements, combined with the fact that defendant placed his hands inside his coat as if reaching for something, all during a valid traffic stop, sufficient to justify a frisk); **see also Commonwealth v. Simmons**, 17 A.3d 399, 404 (Pa. Super. 2011) (finding passenger's movements in reaching towards the floor and across his chest during a traffic stop sufficient to justify a frisk). Accordingly, we reverse the trial court's suppression order and remand for further proceedings.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>5/31/2024</u>