J-S12024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRZEJ MUSZAK | : | No. 2035 EDA 2023 |

Appeal from the Order Entered July 11, 2023
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0002231-2022

BEFORE:  DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:                    **FILED NOVEMBER 25, 2024**

The Commonwealth appeals from the trial court's order suppressing statements made by Andrzej Muszak ("Muszak").[1]  We affirm.

Prior to trial, Muszak filed a motion to suppress statements he made: 1) prior to receiving *Miranda* warnings, 2) immediately after receiving those warnings, and 3) later at police headquarters.  *See* Omnibus Pretrial Motion, 12/8/22, at unnumbered 4.[2]  The Commonwealth conceded at the suppression

---

[1] The Commonwealth is permitted to appeal as of right from an order that does not end the entire case where, as it did here, it certifies that the order will substantially handicap the prosecution.  *See* Pa.R.A.P. 311(d).

[2] The parties agree the police *Mirandized* Muszak twice, once at the scene and once at the police station.  See N.T., 5/2/23, at 20, 24, 29-30, 36-37, 44. Although the parties do not agree about the timing of some of the questions Muszak was asked and his responses, they do agree:  1) Muszak was in custody after officers drew their guns and handcuffed him at approximately

*(Footnote Continued Next Page)*

hearing Muszak was "in custody" at the time of the pre-***Miranda*** statements at approximately 11:28 p.m., which renders inadmissible any statements he made pre-***Miranda.*** As discussed below, the Commonwealth abandons on appeal any claim the statement Muszak made at police headquarters was admissible. Accordingly, we focus substantively only on the admissibility of the statements Muszak made immediately after the administration of ***Miranda*** warnings at approximately 12:04 a.m.

In May 2023, the court held an on-line (virtual) hearing on Muszak's suppression motion,[3] at which the Commonwealth presented one witness: Police Officer Martin Ksepka ("Officer Ksepka"). As an examination of the record demonstrates, Officer Ksepka gave noticeably inconsistent testimony

_____

11:28 p.m., ***see*** N.T., 5/2/23, at 53, 2) Muszak was initially ***Mirandized*** at 12:04 a.m., ***see id***. at 20, 29-30, 36-37, 44, and 3) Muszak was transported to the police station and ***Mirandized*** a second time and questioned, ***see id***. at 24, 43. Thus, at suppression three "sets" of statements were initially at issue: the pre-***Miranda*** questions initially put to Muszak, the immediately post-***Miranda*** questions, and the statements given at the police station when Muszak had been re-***Mirandized***.

[3] The court also briefly addressed a separate *habeas corpus* motion not at issue in this appeal. ***See*** N.T. 5/2/23, at 6-11.

on direct examination and cross-examination,[4] which the trial court found raised credibility questions. **See** N.T. Decision, 7/7/23, at 9.[5]

On direct examination, Officer Ksepka testified late one evening in July 2022, he arrived at a residence and saw a person ("the victim") lying in the driveway. **See** N.T., 5/2/23, at 17-18. Officer Ksepka entered the residence and encountered Muszak, a Polish speaker[6], holding his arms behind his back. **See id**. at 14, 16-17. He testified Muszak did not respond to the officer's commands to show his hands, and later learned Muszak's non-responsiveness may have been the result of a language barrier. **See id**. at 17. Officer Ksepka, who speaks and understands Polish, testified he and three other officers, Corporal Jeff Papi, Officer Zach Swingle, and Officer Covert ("the additional officers"),[7] took Muszak out of the residence, sat him at a picnic table, and began to ask him questions. **See id**. at 14-17. Officer Ksepka testified Muszak

_____

[4] Although the parties referred in passing at the suppression hearing to the preliminary hearing testimony, **see** N.T., 5/2/23, at 5, 7-9, 55, and assumed familiarity with the evidence presented at that hearing, they did not seek to admit testimony from that hearing. Thus, under our standard of review, we confine our discussion to the officer's testimony at the suppression hearing and review it in the order the parties elicited it.

[5] The court did not announce its suppression on the date of the hearing; it did so on July 7, 2023.

[6] At the time of initial entry into the residence, it was unclear that there was a language barrier, and Ksepka only discovered it sometime after Muszak was escorted outside the residence. See N.T., 5/2/23, at 46-47.

[7] The record does not contain Officer Covert's first name.

understood his questions and did not indicate confusion, although he appeared intoxicated. *See id*. at 18-20. Officer Ksepka testified he administered *Miranda* warnings to Muszak in Polish at 12:04 a.m.,[8] and had not previously asked Muszak any questions about the "specifics of the case." *See id*. at 20.[9]

On cross-examination, however, Officer Ksepka offered noticeably different testimony. He initially testified he could not recall if Corporal Papi or Officer Covert had drawn their guns, *see id*. at 27, but later in the cross-examination admitted both he and Officer Covert *had* drawn their guns and he and the additional officers took Muszak into custody at gunpoint with the threat of pepper spray at 11:28 p.m., handcuffed him, and thereafter took him to the picnic table. *See* N.T., 5/2/23, at 27-28, 34, 37-38. Officer Ksepka testified he asked Muszak fewer than ten minutes of non-"guilt-seeking" questions concerning whether there was anyone else in the house *before* giving him *Miranda* warnings at 12:04 a.m. *See id*. at 28-30, 32-33.[10]

_____

[8] Officer Ksepka is not a certified Polish-English interpreter. *See* N.T., 5/2/23, at 26.

[9] Muszak was handcuffed; Officer Ksepka did not have him sign or initial the *Miranda* warnings. *See* N.T., 5/2/23, at 44.

[10] On the record, the court paused the Zoom hearing during the cross-examination of Officer Ksepka because it perceived he was looking down and to his right during questioning. The court ascertained Detective Ryan Venneman was in the room with him. Officer Ksepka denied the detective had passed him a note or had shown him anything during his testimony, but the suppression court made a note of its observations on the record. *See* N.T., 5/2/23, at 29.

Officer Ksepka admitted that after the officers placed Muszak in custody at 11:28 a.m.,[11] they "had to guide him to the picnic table, because he was stumbling around." *See id*. at 38. Officer Ksepka also stated Muszak had "bloodshot and red, glossy eyes," was slurring his speech and mumbling incoherently, and had sustained some injuries for which he had not received treatment. *See id*. at 38, 45, 48. Initially, Officer Ksepka testified that while outside the residence with Muszak, but **before** he administered **Miranda** warnings, a cell phone rang somewhere in the grass near the picnic table, and Muszak asked the officer to retrieve the phone. *See id*. at 41-47. Officer Ksepka testified he asked Muszak, "What happened to the phone?" *see id*. at 40-43, 46, and Muszak said the victim had thrown it there. *See id*. at 41-43. Officer Ksepka later contradicted this testimony and asserted it was **after** receiving **Miranda** warnings that Muszak said he and the victim had fought and the victim threw the phone into the grass. *See* N.T., 5/2/23, at 49.

Officer Ksepka testified he readministered **Miranda** warnings later that morning at the police station prior to taking another statement from Muszak to "document and reinforce the same statement" he had previously given. *See id*. at 24, 44.

At the conclusion of the hearing, the court held the matter under advisement. It announced its decision two months later. The court granted

_____

[11] The Commonwealth conceded the officers placed Muszak in custody at 11:28 p.m. *See* N.T., 5/2/23, at 37.

Muszak's motion to suppress "any statements" Muszak made to the police.

**See** N.T. Decision, 7/7/23, at 11.[12] The court articulated at length the specific

credibility issues it perceived with the officer's testimony:

> At first, [Officer Ksepka] doesn't remember if guns were drawn and then . . . when [defense counsel] got him on cross-examination and I asked him, I said, ["Y]ou got to give me an honest picture of what was going on["], and all of a sudden he remembered, yep, he had a gun pulled. Everybody had a gun pulled.
>
> [A]s I said then[,] I'll say it now, I'm pretty sure an officer will remember when they pulled their weapon. I think this is a pretty memorable event. It happened here because . . . unbeknownst to the officer[]s presen[t,] there was a language barrier and [Muszak] was being instructed to show his hands and he didn't understand anybody.
>
> * * * * *
>
> But there was over 30 minutes of time where [Muszak] was at a picnic table in the back of the yard and there were questions being asked of him. And again, the officer's testimony was all over the place in the hearing before me about what happened, what did he remember, [and] what he didn't remember.
>
> So[,] he testified something along the lines of page 17: My first chance to speak with [Muszak] was when we were giving him verbal commands[] because his hands were still behind his back inside the residence when we came into contact with him.
>
> [S]o that left me with the impression that he had to find [Muszak] and then it was like minutes later he testified that at the

_____

[12] At the decision hearing, the court again mentioned its zoom hearing observations on the record and noted it had perceived that Detective Ryan Venneman, who was with Officer Ksepka during his Zoom suppression testimony, "was trying to either alert [Ksepka] to certain things or was passing him information maybe just to help." **See id**. at 4. The court declared such conduct is not permitted during testimony, and "did not help the credibility assertions." **See id**. at 4-5.

time they didn't understand there was a language barrier but that's what it was.

And then on page 27 when he [was] asked whether Corporal Papi pulled out his gun, his answer was, I don't recall. He was then asked if Officer Covert pulled his gun. "I don't recall".

But when he was shown Officer Covert's report, which apparently indicates that firearms were drawn, he all of a sudden remembered. And then I asked him: Did you pull out your gun? And he remembered. So, again, it was from ["]I don't know["] to ["]I don't remember["] to ["]yeah["].

We had a gentleman who was taken into custody under threat, pepper-sprayed, and then guns were drawn. He was in custody. And then it was interesting. The officer kept saying: Well, I wasn't asking truth-seeking questions. That's not the standard. I think it would have been fair game to ask who all was in the house, was anybody else armed in the house to make sure that safety was ascertained. Those I think were all appropriate questions, but that's not what's going on.

So, I'm going to suppress the statements[] because, unfortunately, in this case, given the circumstances of the officer's testimony, it's all over the place. I can't -- I don't know what to believe about what he said. It's back and forth.

* * * * *

[I] struggled just to figure out how long he was in custody and how long the questioning was going on. At first, the officer didn't recall . . . . And then the Commonwealth could see [Muszak] was in custody at 11:28 [p.m.] and I believe was not *Mirandized* despite the conversation that occurred with questions being asked until 12:04 a.m.

* * * * *

With the phone -- again, I can't assess what accurately happened with the phone based on my questions about truthfulness and honesty from the officer and the story being less than consistent. So[,] I will suppress [Muszak's] statement.

*Id*. at 6-9 (punctuation and capitalization corrected).

- 7 -

The Commonwealth timely appealed the grant of suppression and certified pursuant to Pa.R.A.P. 311(d) the court's order would substantially handicap its prosecution. The Commonwealth and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises the following issue for our review:

> Did the [trial] court commit error in its decision granting [Muszak's] motion to suppress post-***Miranda*** statements requiring said decision to be reversed?

Commonwealth's Brief at 4 (capitalization standardized).

When the Commonwealth appeals an order granting a defendant's motion to suppress, this Court considers only the evidence from the defense witnesses[13] together with the evidence of the prosecution that when read in the context of the entire record remains uncontradicted. ***Commonwealth v. Dales***, 820 A.2d 807, 812 (Pa. Super. 2003). A reviewing court is bound by the trial court's findings of fact if they are supported in the record but conducts plenary review to determine if the court properly applied the law to the facts. ***See Commonwealth v. Dunkins***, 263 A.3d 247, 252 (Pa. 2021); ***Dales***, 820 A.2d at 812. Finally, a reviewing court must accept the suppression court's credibility determinations supported by the record. ***See Commonwealth v. Carver***, 318 A.3d 386, 390 (Pa. Super. 2024).).

_____

[13] Muszak presented no evidence.

- 8 -

The Commonwealth argues the suppression court's decision is "wholly unsupported" by the record. *See* Commonwealth's Brief at 9. It asserts that Muszak implicitly waived *Miranda*, and the suppression court erred by failing to conduct an implicit waiver analysis. For support, the Commonwealth notes the facts of record show "it is uncontradicted that [Officer] Ksepka testified he read [Muszak] his *Miranda* rights in Polish, which was the crux of the motion to suppress." *See id.* at 9-11. The Commonwealth also claims the lower court failed to make the findings of fact and conclusions of law required by Pa.R.Crim.P. 581 (I). *See* Commonwealth's Brief at 11-13.[14]

A person is entitled to *Miranda* warnings when he is subjected to a custodial interrogation, and custody occurs when a person "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015). In making an objective assessment under the totality of the circumstances whether a detention has become so coercive as to constitute the functional equivalent of arrest, a court considers: the basis for the detention; its length; its location; whether the suspect was transported

---

[14] The Commonwealth's brief asserts the court erred in granting Muszak's motion "to suppress blood results." *See* Commonwealth's Brief at 8. No blood results are at issue in this case. It also asserts the testimony Muszak put forth is "inconsistent and inconclusive. . ." *See id*. at 8-9. Muszak offered no testimony.

against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *See Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016).

Furthermore, when the Commonwealth seeks to introduce a statement given after an initial *Miranda* violation, the prosecution must demonstrate facts "sufficient to insulate the [second] statement from the effect of all that went before." *See Commonwealth v. Burno*, 154 A.3d 764, 789 (Pa. 2017) (quoting *Clewis v. Texas*, 386 U.S. 707, 710 (1967)). As the United States Supreme Court otherwise framed the inquiry, the relevant question is whether "granting establishment of the primary illegality, the evidence to which objection is made has been come at . . . by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *See Burno*, 154 A.3d at 788 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)). To assess whether the original taint has been sufficiently purged, courts consider whether *Miranda* warnings were given, the temporal proximity of the illegal conduct to the confession, the presence of intervening circumstances or events, and the purpose or flagrancy of the official misconduct. *See Burno*, 154 A.3d at 789 (citing *Commonwealth v. Green*, 581 A.2d 544, 550-51 (Pa. 1990)).

As it relates to the first set of statements (prior to initial *Miranda* warnings), the Commonwealth conceded Muszak was in custody prior to

Officer Ksepka's initial *Miranda* reading; thus, any statements Muszak made before Officer Ksepka read him his *Miranda* rights at 12:04 a.m. are inadmissible.[15]  As it relates to the third set of statements (post second *Miranda* warnings at the police station), the Commonwealth offered no evidence at suppression to show that the taint of the original violative custodial questioning was purged.  In fact, the only testimony offered regarding the questioning at the police station indicates that the purpose of the interview was simply to memorialize on video the answers Muszak previously gave when questioned at the picnic bench.  *See Wong Sun v. United States*, 371 U.S. at 486; *Burno*, 154 A.3d at 788-89. The Commonwealth does not argue on appeal that the court erred in suppressing the statements at the police station.[16]  Accordingly, we assess only the admissibility of Muszak's statements made when he sat at the table immediately after Officer Ksepka read his *Miranda* rights to him at 12:04 a.m.

_____

[15] Nor could the Commonwealth argue this successfully.  Statements made during custodial interrogation prior to the administration of *Miranda* warnings are inadmissible.  *See, e.g., Commonwealth v. Cooley*, 118 A.3d 370, 379 (Pa. 2015); *Commonwealth v. Seeney*, 316 A.3d 645, 650 (Pa. Super. 2024).

[16] In this regard, we note Officer Ksepka testified he took the statement at the police station to "document and reinforce the same statement [Muszak had already given]," *see* N.T. 5/2/23, at 24, 44, which undermines the possibility, which the Commonwealth does not in any event assert, that intervening actions purged the original taint.

In light of the Commonwealth's concession that Muszak was "in custody" at 11:28pm, the suppression court found Officer Ksepka subjected Muszak to custodial interrogation without **Miranda** warnings. **See** N.T. Decision, 7/7/23, at 8, 9 (rejecting the implication that interrogation is permissible if it does not include "truth-seeking questions"). The court also found Officer Ksepka's testimony, including his initial, professed inability to recall whether he drew his gun, raised questions about his truthfulness and honesty, and as a consequence the court did not know "what to believe about what he said. It's back and forth." **See id**. at 6-9. In other words, Officer Ksepka's testimony lacked credibility and for those reasons, the court suppressed all Muszak's statements.[17]

Upon review of the record in conjunction with the suppression court's findings, we perceive no legal error in the trial court's ruling. It has long been clear that a court need not accept as true even uncontradicted testimony. **See In re Estate of Grigg**, -- A.3d ---, ---, 2024 WL 4194635 at *4 (Pa. Super, filed September 16, 2024). **See also Aaron v. Strausser**, 59 A.2d 910, 912 (Pa. 1948) (holding that even where direct evidence contradicting a witness's testimony is lacking, the court may reject that testimony where it contains inherent improbabilities that furnish a ground for concluding it is

---

[17] This Court is not free to reverse a suppression court's findings that have record support. **See Commonwealth v. Carmenates**, 266 A.3d 1117, 1123 (Pa. Super. 2021) (*en banc*). Nor can we disturb the suppression court's credibility determinations. **See Commonwealth v. Carver**, 318 A.3d at 390.

untrue). ***See also Carmenates***, 266 A.3d at 1123 (stating a suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing). Further, the Court must only accept testimony which when read in the context of the entire record remains **uncontradicted**. ***See Dales***, 820 A.2d at 812.

Here, as an initial matter, the court found Officer Ksepka's testimony so internally inconsistent and contradictory it did not know what to believe. ***See*** N.T. Decision, 7/7/23, at 8. It specifically noted its difficulty believing the officer's original testimony on direct examination that he could not recall if he drew his gun when he admitted on cross-examination he did. Further, based on the officer's own testimony, the court determined Officer Ksepka committed an initial illegality by conducting custodial interrogation without ***Miranda*** warnings during the period between 11:28 p.m. and 12:04 a.m. ***See id***. at 9. Thus, any statement Muszak made before 12:04 a.m.[18] was illegally obtained and properly suppressed, a ruling the Commonwealth does not challenge on appeal.

The court also correctly suppressed Muszak's post-***Miranda*** statements made immediately after Officer Ksepka informed him of his ***Miranda*** rights.

_____

[18] Notably, even within his testimony on cross examination Officer Ksepka's was inconsistent regarding what Muszak said before 12:04 a.m. He originally testified Muszak told him **before** the administration of ***Miranda*** warnings that victim had thrown his phone, **see** N.T., 5/2/23, at 42-43, then testified Muszak first made that statement after receiving ***Miranda*** warnings, **see id**. at 49.

The Commonwealth asserts the officer read Muszak his *Miranda* rights in Polish and Muszak was "clearly cognizant of what was happening when he waived *Miranda* and spoke to officers." *See* Commonwealth's Brief at 11. Officer Ksepka's own testimony substantially undermined this assertion of a knowing and intentional waiver. The officer testified he and the other officers took Muszak into custody at gunpoint, and Muszak had to be helped to walk because he had "bloodshot and red, glossy eyes," slurred his speech and mumbled incoherently, and had sustained some injuries for which he had not received treatment. *See* N.T., 5/2/23, at 38, 45, 48. Thus, because Officer Ksepka's own testimony established a *Miranda* violation in Muszak's questioning prior to 12:04 a.m., the relevant inquiry is whether the prosecution's evidence was sufficient to insulate the statement given immediately after Muszak was read his *Miranda* rights from the statements given prior to *Miranda. See Clewis*, 386 U.S. at 710; *Burno*, 154 A.3d at 789.

The Commonwealth fails to discuss how much time ensued between the *Miranda* violation that occurred when Officer Ksepka conducted custodial interrogation between 11:28 p.m. and 12:04 a.m., and the statement Muszak gave immediately after being informed of his *Miranda* rights. It presented no evidence below to satisfy its burden to prove the purging of the original taint: *i.e.*, how much time passed between the original illegal questioning, and whether any intervening circumstances or events occurred,

or the purpose or flagrancy of the official misconduct. *See Burno*, 154 A.3d at 789; *Green*, 581 A.2d at 550-551. Thus, nothing of record permits us to conclude Muszak's statement immediately post-*Miranda* was purged of the primary taint. *See Wong Sun*, 371 U.S. at 471; *Burno*, 154 A.2d at 788.

The suppression court also emphasized several inconsistencies in Officer Ksepka's testimony relating to the timing of his discussion with Muszak concerning the phone and the victim's throwing of the phone. *Compare* N.T., 5/2/23, at 42-43 (Officer Ksepka testifies Muszak's statement the victim threw his phone occurred prior to 12:04 a.m.), with N.T., 5/2/23, at 49-50 (Officer Ksepka testifies Muszak's statement the victim threw his phone was "definitely post-*Miranda*"). The suppression court's factual findings and credibility determinations have clear record support, defeating the Commonwealth's contrary assertion. Nor does the Commonwealth explain how an "implicit waiver" analysis could render valid a statement made immediately following a violation of *Miranda* with no intervening circumstances. Accordingly, we affirm the court's suppression order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/25/2024

- 15 -