J-A26006-23

2024 PA Super 103

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
:
v. :
:
:
:
TYREE T. SEENEY : No. 1236 EDA 2023

Appeal from the Order Entered May 10, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004326-2022

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

OPINION BY DUBOW, J.:                        **FILED MAY 21, 2024**

The Commonwealth appeals from the May 10, 2023 Order entered in the Bucks Court of Common Pleas that granted Appellee Tyree Seeney's motion to suppress a statement that he made to a Warwick Township constable. After careful review, we affirm.

**A.**

We glean the following factual and procedural history from the suppression court opinion and the certified record. On July 19, 2022, the Commonwealth charged Mr. Seeney with Criminal Attempt-Possession of a Prohibited Firearm and two counts of Materially False Written Statement-Purchase, Delivery, or Transfer of Firearm as a result of Mr. Seeney's alleged attempt to purchase a firearm illegally.[1]

---

[1] 18 Pa.C.S. §§ 901(a) and 6111(g)(4)(ii), respectively.

On August 29, 2022, Constable Alan Sigafoos transported Mr. Seeney from the Bucks County Correctional Facility to the District Court in Warwick Township for his preliminary hearing. Constable Sigafoos is the elected constable for Warwick Township in Bucks County. As a constable, his employer is the Pennsylvania Commission on Crime and Delinquency and part of his duties include transporting inmates and serving warrants. Also, Constable Sigafoos is a retired police officer in Newtown Township and is currently a part-time police officer in Penndel Borough.

On the day of Mr. Seeney's preliminary hearing, Constable Sigafoos and his partner, Constable Jon Forest, transported Mr. Seeney and another inmate from the county prison's holding cell to the courthouse using a vehicle equipped with a cage. Mr. Seeney was shackled and handcuffed from when he left the prison until he returned. While at the courthouse, Mr. Seeney waited for his preliminary hearing in what Constable Sigafoos "call[ed] a conference room, but it's a holding area where the constable is maintaining watch over the defendant." N.T. Suppression Hr'g, 4/28/2023, at 13.

While in the holding area, Constable Sigafoos asked Mr. Seeney why he had a sling on his arm. Mr. Seeney responded that he had been shot while working as a security guard and that he had shot back. Constable Sigafoos then asked Mr. Seeney what brought him to court. Mr. Seeney responded that he attempted to purchase a firearm at a certain store called Tanner's. Constable Sigafoos then asked why Mr. Seeney had not completed the

purchase of the firearm and Mr. Seeney responded that he was not allowed to purchase a firearm. Constable Sigafoos then commented that Mr. Seeney's employer would have done "a clearance on [him]," and Mr. Seeney responded that "something is messed up." *Id*. at 17.

Constable Sigafoos did not initially tell anyone else about Mr. Seeney's admission that he was ineligible to purchase a firearm, but attempted to do so anyway. However, Detective Corporal Paul Fox was waiting outside of the conference room and overheard part of this conversation, specifically the mention of Tanner's, which piqued his interest. He called Constable Sigafoos the next day to ascertain the details of that conversation and Constable Sigafoos informed him.

Before trial, Mr. Seeney filed a motion to suppress "any and all incriminating statements" made to Constable Sigafoos and overheard by Detective Corporal Fox, alleging that Constable Sigafoos failed to give Mr. Seeney his *Miranda* warnings before questioning him. Motion to Suppress, 4/21/2023, at 1-2. At the suppression hearing, Constable Sigafoos and Detective Corporal Fox testified in accordance with the above facts. On cross-examination, Constable Sigafoos also testified that it is normal for him to ask defendants why they are in court, but that he "always say[s] allegedly." N.T. Hr'g at 34.

The suppression court granted the motion to suppress, finding that Constable Sigafoos' questions "place[d Mr. Seeney] in a position where any

response could be incriminating[.]" Suppression Ct. Op., 7/7/23, at 5. The Commonwealth then filed a timely appeal pursuant to Pa.R.A.P. 311(d).[2] Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

**B.**

The Commonwealth raises the following issues for our review:

1. Did the suppression court err[] in granting suppression of statements made by [Mr. Seeney] to Constable Sigafoos where, even assuming he was a law enforcement officer, his words, actions, and the surrounding circumstances were such that he would not have reasonably known his statements were likely to elicit an incriminating response?

2. Did the suppression court err[] in granting suppression of statements made by [Mr. Seeney] to Constable Sigafoos as a constable is not a law enforcement officer and not subject to the prophylactic rules set forth in **Miranda v. Arizona**, 384 U.S 436 (1966)?

Commonwealth's Br. at 4 (reordered for ease of disposition).

**C.**

Our standard of review for suppression determinations is well settled. We review the grant of a suppression motion to determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Carmenates**, 266 A.3d 1117, 1122-23 (Pa. Super. 2021) (*en banc*) (citation omitted). We defer to the suppression court's factual findings if they are supported by the record.

---

[2] Rule 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

*Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). We, however, give no such deference to the suppression court's legal conclusions and, instead, review them *de novo*. *Id.* An appellate court can affirm a valid judgment for any reason supported by the record. *Commonwealth v. Hamlett*, 234 A.3d 486, 488 (Pa. 2020).

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012) (citation omitted); *see also* Pa.R.Crim.P. 581(H).

It is well-settled that when a defendant is subject to a custodial interrogation, the Fifth Amendment requires that law enforcement officers provide a defendant with his *Miranda* warnings. U.S. CONST. amend. V; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See also Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (applying *Miranda*).

The Commonwealth raises two issues on appeal. First, whether Constable Sigafoos "interrogated" Mr. Seeney and second, whether an interrogation by a constable rather than a law enforcement officer triggers the requirement that the constable provide the *Miranda* warnings to a defendant. We find that the trial court correctly found that Constable Sigafoos "interrogated" Mr. Seeney and second, that in light of the coercive environment that Constable Sigafoos created under governmental authority

- 5 -

when he questioned Mr. Seeney, Mr. Seeney was entitled to the protections of the **_Miranda_** warnings before Constable Sigafoos interrogated him.

**D.**

The suppression court, when determining whether an encounter qualifies as a custodial interrogation, should consider objectively the totality of the circumstances and the impression those circumstances have on the defendant:

> [t]he standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission."

**_Mannion_**, 725 A.2d at 200 (internal citations omitted).

We emphasize that this determination "does not depend upon the subjective intent of the law enforcement officer interrogator." **_Commonwealth v. Gonzalez_**, 979 A.2d 879, 888 (Pa. Super. 2009) (citation omitted). Rather, to determine if a law enforcement officer should have known that questioning was reasonably likely to produce an incriminating response, we consider the totality of the circumstances surrounding the interaction with a focus on the suspect's perception and the police officer's knowledge. **_Commonwealth v. Briggs_**, 12 A.3d 291, 323 (Pa. 2011).

The Commonwealth argues that several factors weigh against finding that Constable Sigafoos interrogated Mr. Seeney. Specifically, it emphasizes that Constable Sigafoos always had conversations with the inmates that he transported, always asks questions with the word "allegedly," had no knowledge of why Appellant was in custody, and did not tell anyone about the statement until Detective Corporal Fox called him. Commonwealth's Br. at 21-22. This argument is not persuasive.

First, contrary to the Commonwealth's argument, Constable Sigafoos' subjective intent when asking Mr. Seeney questions is irrelevant. *Gonzalez*, 979 A.2d at 888. In particular, it is irrelevant that Constable Sigafoos did not know the basis for the prosecution of Mr. Seeney, that Constable Sigafoos always asked the questions about the prosecution when transporting inmates and did not tell anyone that Mr. Seeney admitted that he attempted to purchase a firearm when he was ineligible to do so. Rather, the focus is on whether the totality of circumstances demonstrate that Constable Sigafoos was subjecting Mr. Seeney to an interrogation.

The trial court properly analyzed the facts of the situation by concluding that by asking Mr. Seeney what brought Mr. Seeney to court that day, it is reasonable to conclude that Mr. Seeney's response was "likely to evoke admission" or other incriminating information. This is especially true because Constable Sigafoos continued to ask Mr. Seeney for details even after learning from his initial question that Mr. Seeney was in court as a defendant, not as

a shooting victim. Suppression Ct. Op. at 4-5; *Mannion*, 725 A.2d at 200 (citation omitted). *Cf. Commonwealth v. Chester*, 587 A.2d 1367, 1376-77 (Pa. 1991) (concluding that the constable asking whether defendant's attorney wanted him to wear a bullet-proof vest was not interrogation; rather, it was a yes or no question necessary for security, "not calculated [] to evoke an admission," and defendant added incriminating detail unprompted).

In sum, we agree with the trial court's analysis and findings that Constable Sigafoos subjected Mr. Seeney to a custodial interrogation and reject this ground for the Commonwealth's challenge to the trial court's decision to grant the Motion to Suppress.

**D.**

The Commonwealth next asserts that trial court erred in granting the Motion to Suppress because constables are not law enforcement officers, and thus, cannot create a custodial interrogation. In particular, the Commonwealth argues that because a constable is not a "state employee," but rather an independent contractor who does not act for or under the control of the Commonwealth, the constable cannot create a custodial interrogation. Commonwealth's Br. at 12 (*citing In re Act 147 of 1990*, 598 A.2d 985, 986-87 (Pa. 1991)).

The Commonwealth further cites constables' limited powers to argue that constables are not law enforcement officers, and also attempts to distinguish Constable Sigafoos from law enforcement officers by describing his

"primary purpose" as transportation. *Id.* at 12, 15, 20. Finally, the Commonwealth maintains that there is no authority that confers police powers on constables and contrasts constables to, among other positions, school police officers. *Id.* at 16. (*citing In re R.H.*, 791 A.2d 331, 334 (Pa. 2002) (school police must give *Miranda* warnings because they have the same power as municipal police on school property)).

The foundation for the Commonwealth's argument is that because no statute explicitly grants to constables governmental authority when transporting and guarding defendants, the government has not delegated any authority to a constable and thus, a constable, who is transporting and guarding a defendant, is no different from a private individual transporting and guarding a defendant. In other words, an Uber driver transporting a defendant to court has the same level of government authority as a constable transporting a defendant to court. We disagree.

The Commonwealth ignores the fact that when the government delegates to the responsibility to a constable to transport and guard an incarcerated defendant, the government is also delegating its authority to control the defendant. The fact that the statutes do not explicitly provide for such delegation of authority to control an incarcerated defendant is irrelevant because it is reasonable to infer from the fact that the defendant is incarcerated, the defendant is shackled, and the constable is guarding the defendant with a firearm that the government is exercising its authority and

- 9 -

control over the defendant. The constable is not acting like a private individual or an Uber driver.

In this case, the suppression court correctly noted that Constable Sigafoos was responsible not only for transporting Mr. Seeney to his preliminary hearing, but also for maintaining Mr. Seeney's detention, which he did while armed with a firearm. Suppression Ct. Op. at 4. He drove Mr. Seeney, who was handcuffed and shackled, from the prison to the courthouse in a vehicle equipped with a cage, and guarded Mr. Seeney as he remained shackled in a conference room. N.T. Hr'g at 13. Mr. Seeney was not free to leave during this time, and it was Constable Sigafoos' responsibility to ensure that he did not.

Since Constable Sigafoos was responsible for creating and maintaining the custodial environment at the behest of the government and asserted the same authority that a law enforcement officer would assert in a similar situation, we conclude that he was not allowed to question Mr. Seeney without first providing him **Miranda** warnings. U.S. Const. amend. V. Accordingly, the court correctly suppressed Mr. Seeney's responses to Constable Sigafoos' questions.[3]

---

[3] Although the suppression court erred in relying on 13 P.S. § 40, a partially repealed statute, to analyze the constable's status as a law enforcement officer, we may affirm its ruling on any basis. **Hamlett**, 234 A.3d at 488.

**E.**

In sum, we conclude that the suppression court properly suppressed Mr. Seeney's statements provided to Constable Sigafoos in response to his questions because Constable Sigafoos, acting with governmental authority, subjected Mr. Seeney to a custodial interrogation without first giving him *Miranda* warnings. Accordingly, we affirm the order granting the suppression motion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/21/2024