J-S06008-25          2025 PA Super 61

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
ANDREW DAVID MILLER : No. 1051 WDA 2024

Appeal from the Suppression Order Entered July 30, 2024
In the Court of Common Pleas of Venango County
Criminal Division at No(s):  CP-61-CR-0000133-2024

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

OPINION BY PANELLA, P.J.E.:          **FILED: March 14, 2025**

The Commonwealth appeals from the order of the Court of Common Pleas of Venango County which granted Andrew David Miller's suppression motion. The Commonwealth argues the suppression court erred in granting Miller's suppression motion because Miller was legally detained and **Terry**[1] frisked. After careful review, we affirm in part and reverse in part.

We glean the following factual and procedural history from the certified record. On February 27, 2024, around 10:30 p.m. on a rainy night, two Pennsylvania State Police Troopers observed Miller attempt to enter the front passenger side of a parked car. The driver, Rachel Fleeger, looked confused and Miller threw his hands in the air. Miller then entered the vehicle, and Fleeger drove out of the parking lot. Shortly after, she failed to properly stop

---

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

at a stop sign. The troopers initiated a traffic stop and the vehicle was pulled over.

One trooper approached the passenger side and the other trooper approached the driver's side. Upon request, Miller and Fleeger provided the troopers their IDs. During this interaction, Miller had shaky hands and was breathing heavily. The troopers went back to their patrol vehicle for about 10 minutes to check the IDs and vehicle registration.

When the troopers returned to the vehicle, they asked Miller to step out of the vehicle due to his nervous demeanor. One trooper observed a small yellow rubber band on the passenger side of the vehicle. Based on his training and experience, this trooper believed the small rubber band was used in the packaging of narcotics. Either before requesting Miller to exit the vehicle or while Miller was exiting the vehicle this trooper observed a rolled paper filled with marijuana (i.e., a "joint") in the center console.[2] Miller exited the vehicle with his hands up and fully cooperated.

The other trooper conducted a *Terry* frisk of Miller. During his pat down, this trooper felt a box shaped hard plastic container in Miller's groin region which he suspected contained contraband but did not suspect to be a weapon. Miller started yelling and becoming irate and claimed that the item was his penis.

---

[2] The suppression court did not make a factual finding as to when the trooper observed the rolled paper of marijuana and there is no uncontradicted evidence in the record as to when exactly it was observed.

Next, Fleeger consented to a vehicle search. Other than the items previously observed in plain view, the vehicle search resulted in the recovery of glass pipes, a digital scale, and a plastic bag with marijuana. These items were all found in Fleeger's bag and were not connected to Miller. *See* N.T., 6/25/24, at 20-21, 35.

After the vehicle search, the troopers informed Miller that he was under arrest. The troopers' testimony suggests that they arrested Miller for his actions in obstructing the frisk and the rolled paper of marijuana observed in plain view, and additionally to further investigate the object that they detected during the *Terry* frisk. They informed him that he would be transported back to the police station "for further investigation of what the box was containing inside his pants." Aff. of Prob. Cause, at 2. To conduct the search incident to arrest the troopers had to forcibly detain Miller during which suspected drug paraphernalia fell out of his pants. The further search of Miller resulted in the recovery of additional drug paraphernalia, a marijuana joint, and a large amount of methamphetamine.

Miller was charged with possession with the intent to deliver methamphetamine (35 P.S. § 780-113(a)(30)), possession of methamphetamine (35 P.S. § 780-113(a)(16)), possession of a small amount of marijuana for personal use (35 P.S. § 780-113(a)(31)(i)), possession with intent to use drug paraphernalia (35 P.S. § 780-113(a)(32)), resisting arrest (18 Pa.C.S.A. § 5104), and obstructing the administration of law (18 Pa.C.S.A.

- 3 -

§ 5101). Miller filed a suppression motion, and a hearing was held on June 25, 2024. Both troopers testified at the hearing.[3]

On July 30, 2024, the suppression court issued a two-sentence order that granted Miller's suppression motion and stated that "[a]ll evidence discovered after requiring [Miller] to exit the vehicle is hereby suppressed." Order, 7/30/24. The Commonwealth filed an interlocutory appeal[4] and complied with the suppression court's order to file a 1925(b) statement. The suppression court filed a 1925(a) opinion explaining the reasons for its ruling.

In its 1925(a) opinion the suppression court found that the troopers' removal, detention, and frisk of Miller was based on "the observation of a single, small, yellow rubber band." 1925(a) Opinion, at 1. The suppression court concluded that the rubber band was insufficient to establish "reasonable suspicion of drug use or drug dealing sufficient to remove and detain [Miller]." *Id.* at 2. Further, the suppression court concluded that the repeated frisks of

_____

[3] At the end of the suppression hearing, the suppression court continued the matter to allow defense counsel to review the MVR footage and instructed him to notify the court whether "further testimony or hearing is necessary." N.T., 6/25/24, at 38. A few days later, "after a Supplemental Hearing," the suppression court directed the Commonwealth and Miller to submit memorandums of law. Order, 7/1/24. Although it is unclear based on the suppression court's order, there is no transcript or anything else in the record to suggest that there was a supplemental hearing other than the initial June 25, 2024, suppression hearing. Therefore, our review is limited solely to that suppression hearing.

[4] Pursuant to Pa.R.A.P. 904(e), the Commonwealth certified that the suppression order "has terminated or substantially handicapped [its] prosecution of this case." *See* Certificate of Termination.

Miller were unlawful because the troopers did not suspect that the item in Miller's groin area was a weapon or that Miller posed a threat to their safety. *See id.* at 2. Lastly, based on its review of the MVR footage, the suppression court found that Miller was not aggressive towards the troopers during his detention to warrant a charge of resisting arrest. *See id.* at 2-3.

On appeal, the Commonwealth raises three issues. First, the Commonwealth argues we should remand the matter to the suppression court to enter findings of fact and conclusions of law. *See* Commonwealth's Brief, at 7. Second, the Commonwealth argues the suppression court erred in granting the suppression motion because the troopers conducted a lawful *Terry* frisk. *See id.* at 8-12. Third, the Commonwealth argues that the suppression court erred in suppressing the evidence since Miller was lawfully placed under investigative detention for the drug paraphernalia seen in plain view inside the vehicle and during the lawful investigative detention drugs and drug paraphernalia fell out of his pants. *See id.* at vi, 2, 8-12.

A suppression court is required, at the end of a suppression hearing, to enter findings of fact and conclusions of law on the record. *See* Pa.R.Crim.P. 581(I). Here, the suppression court did not enter findings of fact and conclusions of law on the record after the hearing or in its order granting Miller's motion. Previously, we have remanded for a suppression court to enter findings of fact and conclusions of law when the suppression court failed to do so and did not file a 1925(a) opinion explaining its ruling. *See Commonwealth v. Sharaif*, 205 A.3d 1286, 1289-90 (Pa. Super. 2019).

- 5 -

However, we have conducted appellate review in situations when the suppression court failed to enter findings of fact and conclusions of law on the record but issued a 1925(a) opinion explaining its ruling. *See Commonwealth v. Rivera*, 311 A.3d 1160, 1163 n.2 (Pa. Super. 2024), *appeal denied*, 325 A.3d 1024 (Pa. 2024) (explaining that absent a suppression court's findings of fact and conclusions of law on the record "appellate review may be possible based on facts in an opinion in support of an order on appeal.") (citation omitted). Here, the suppression court explained its reasoning for its order in its 1925(a) opinion. Therefore, a remand is not necessary, and we turn to the Commonwealth's arguments.

The law governing our review of a suppression court's order is well-established.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the defendant prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Tillery*, 249 A.3d 278, 280 (Pa. Super. 2021) (citation and brackets omitted).

Initially, we consider the Commonwealth's claim that the trooper's plain view observation of a rolled paper containing marijuana in the vehicle's center console contributed to the troopers' reasonable suspicion to justify the ***Terry*** frisk. ***See*** Commonwealth's Brief, at 9. In his brief, Miller recognizes that the troopers observed "papers" in the center console. ***See*** Appellee's Brief, at 4, 9, 13, 15. However, in its 1925(a) opinion the suppression court makes no mention of the trooper's observation of the rolled paper of marijuana and instead explained that the troopers' observation of a single small yellow rubber band did not justify the ***Terry*** frisk. ***See*** 1925(a) Opinion, at 2. There is a gap in the suppression court's findings regarding the observation of marijuana and rolling papers. Thus, we must review the evidence presented by Miller, and as much of the Commonwealth's evidence that remains uncontradicted, i.e., that the trooper observed rolled papers of marijuana in the center console prior to the ***Terry*** frisk. ***See Tillery***, 249 A.3d at 280.

Our review of the record indicates that the troopers testified multiple times that the first trooper observed rolled papers of marijuana in the vehicle's center console prior to the ***Terry*** frisk. Both troopers testified that this was observed and a rolled paper of marijuana in the center console was seen. ***See*** N.T., 6/25/24, at 8, 19-20, 22, 34. Miller presented no evidence that contradicts this testimony. Therefore, we will consider the trooper's observation of the rolled paper of marijuana in the vehicle's center console when deciding whether the suppression court erred in concluding that the investigative detention and the ***Terry*** frisk were unlawful.

Importantly, our focus is on the suppression court's findings and conclusions related to the investigative detention and *Terry* frisk. The suppression court suggests that the evidence presented by the Commonwealth was insufficient not only to detain and frisk Miller but also to remove him from the vehicle. *See* 1925(a) Opinion, at 2. We note that although the troopers asked Miller out of the vehicle, detained him, and frisked him in quick succession, they are distinct events. Officers have "an absolute right" and do not need reasonable suspicion to ask an occupant to step out of a vehicle for the duration of a lawful traffic stop. *See Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (citations omitted). Asking a passenger out of a vehicle is only a seizure if the traffic stop has concluded. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1202 (Pa. Super. 2002) (*en banc*). Here, the traffic stop had not concluded; the troopers had just returned Fleeger and Miller their IDs and had not yet issued a citation. Therefore, the suppression court erred in concluding that the troopers could not remove Miller from the vehicle.

The Commonwealth argues that the *Terry* frisk was lawful because the troopers had reasonable suspicion of criminal activity based on their observation of Miller's nervousness and the plain view of the yellow band, which in their training and experience is used for packaging drugs, and the rolled paper of marijuana in the center console. *See* Commonwealth's Brief, at 8-12. Thus, according to the Commonwealth, the pat down of Miller's groin

area was justified because people involved with drugs hide contraband there. *See id.* at 12.

Miller claims that the troopers were searching for drugs under the guise of a frisk for weapons. *See* Appellee's Brief, at 5. Miller asserts the frisk was unjustified because there was no reasonable suspicion that Miller was a threat to the troopers' or others' safety. *See id.* at 8-9. Further, he argues that he was not a safety threat because he made no furtive movements and there was no evidence that the troopers suspected that he was hiding a weapon. *See id.* at 10-11, 14-15.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019) (citation omitted). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Id.* (citation omitted).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

*Commonwealth v. Brinson*, 328 A.3d 1096, 1104 (Pa. Super. 2024) (citation omitted).

"[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous." *Int. of T.W.*, 261 A.3d 409, 417 (Pa. 2021) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009)). "A *Terry* frisk is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot and that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014) (citation and quotation marks omitted). "To validate a *Terry* frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." *Commonwealth v. Cunningham*, 287 A.3d 1, 10 (Pa. Super. 2022) (citation omitted). "In determining whether a *Terry* frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances." *Id.*

We agree with the Commonwealth that Miller's initial investigative detention after the troopers had him step out of the vehicle was legal. Miller was detained based on the troopers' observation of his nervousness, the rubber band, and the rolled paper of marijuana in the vehicle's center console. These facts, particularly the rolled paper of marijuana, gave the troopers

reasonable suspicion that Miller illegally possessed marijuana, i.e., that criminal activity was afoot.[5]

However, based on the totality of the circumstances, we conclude the troopers failed to articulate specific facts from which they could reasonably infer that Miller was armed and dangerous to justify a **Terry** frisk.

A factually analogous case, **Commonwealth v. Henderson**, No. 882 MDA 2023, 2024 WL 4235017 (Pa. Super. filed Sept. 19, 2024) (unpublished memorandum), is instructive.[6]

In **Henderson**, during a traffic stop a trooper observed in plain view a digital scale with marijuana "shake" on it in the center console. **See id.** at *1. The troopers asked the defendant out of the vehicle, placed him under investigative detention, and performed a frisk. **See id.** During the frisk, the trooper felt what he believed to be a bag of marijuana in the defendant's pocket and removed it. **See id.** The troopers then retrieved the digital scale from the vehicle and found a firearm. **See id.** The suppression court granted the defendant's motion to suppress the bag of marijuana and firearm but denied the motion as to the digital scale. **See id.** The suppression court found the frisk to be unlawful because the defendant "was not under arrest and the

_____

[5] Under the Medical Marijuana Act, unused medical marijuana must be kept in its original packaging. **See** 35 P.S. § 10231.303(b)(6). Further, medical marijuana cannot be smoked. **See** 35 P.S. § 10231.304(b)(1); **see also** 35 P.S. § 10231.303(b)(2) (legal forms and consumption of medical marijuana).

[6] Non-precedential decisions filed after May 1, 2019, may be cited as persuasive authority. **See** Pa.R.A.P. 126(b)(2).

troopers did not have reason to believe that there was a danger to their safety at the time of the pat down." **Id.** (record citation omitted).

On appeal, we affirmed because the troopers failed to articulate any facts from which it could be inferred that the defendant was armed and dangerous. **See id.** at *3. Specifically, the troopers did not observe any furtive movements, did not observe any object that might be a weapon, and the defendant did not act in a hostile or threatening way. **See id.** We further explained that our Courts have rejected the notion that involvement with illegal drugs alone supports an inference that a defendant is armed and dangerous. **See id.** at *4 (citing **Commonwealth v. Grahame**, 7 A.3d 810, 816-17 (Pa. 2010)).

Similarly, here, the troopers failed to articulate specific facts from which they could reasonably infer that Miller was armed and dangerous. Miller did not make any furtive movements, the troopers did not observe any object that could be a weapon, and Miller did not act in a hostile or threatening manner. In fact, Miller fully cooperated—he exited the vehicle with his hands up and did not prevent the troopers from frisking him. **See** N.T., 6/25/24, at 17, 34. Further, in its brief, the Commonwealth seemingly concedes that the troopers frisked Miller's groin area to detect drugs rather than for safety reasons stating that "people involved with narcotics hide drugs in that area[.]" Commonwealth's Brief, at 12 (citing N.T., 6/25/24, at 10). Miller's nervousness and proximity to a yellow rubber band and a rolled paper of marijuana did not establish a sufficient articulable basis from which it could

be reasonably inferred that he was armed and dangerous to justify a **Terry** frisk. **See Henderson**, No. 882 MDA 2023, 2024 WL 4235017. Therefore, the Commonwealth's argument as to the lawfulness of the **Terry** frisk does not merit relief.

Lastly, the Commonwealth argues that suppression was not warranted because the troopers discovered drugs and paraphernalia on Miller's person during the lawful investigative detention. **See** Commonwealth's Brief, at 2-3, 8, 12 Specifically, the Commonwealth asserts that items fell out of Miller's pockets while he was lawfully detained. **See id.** at 12. We are unconvinced by the Commonwealth's argument for two reasons.

First, the suppression court did not find, and there is no uncontradicted evidence, that drugs and drug paraphernalia fell out of Miller's pockets during his lawful investigative detention. Rather, the uncontradicted evidence was that items fell out of Miller's pants while he was being searched incident to arrest before being placed in the police vehicle. The troopers both testified that drugs and paraphernalia fell out of Miller's pants when they arrested him and searched him incident to arrest. **See** N.T., 6/25/24, at 11, 30, 35; **see also** Aff. of Prob. Cause, at 2. Further, one trooper testified that items fell out of Miller's pants when Miller was placed up against the police vehicle and the troopers had to forcibly spread his legs to search him. **See id.** at 30. We see no uncontradicted evidence in the record that there was a separate incident during the investigative detention where items fell out of Miller's pants.

Therefore, we reject the Commonwealth's assertion that items fell out of Miller's pants during the permissive investigative detention.

Second, the Commonwealth failed to meet its burden that items recovered during the search incident to arrest were not obtained via exploitation of the troopers detecting suspected contraband during the illegal **Terry** frisk.

"[I]t is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Seeney**, 316 A.3d 645, 648-49 (Pa. Super. 2024) (citations omitted).

> [E]vidence constitutes poisonous fruit, and, thus, must be suppressed if, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

**Commonwealth v. Easter**, -- A.3d --, 2025 WL 16361, at *3 (Pa. Super. filed Jan. 2, 2025) (citation omitted). "The inquiry simply is whether the evidence was obtained via exploitation of the initial illegality." **Commonwealth v. Shabezz**, 166 A.3d 278, 289 (Pa. 2017).

The troopers offered conflicting testimony as to why Miller was placed under arrest and searched incident to arrest. They testified that Miller was arrested for the drug paraphernalia seen in plain view in the vehicle and for

resisting arrest.[7] **See** N.T., 6/25/24, at 12, 19-22, 29-30, 35. Notably, however, both troopers also offered testimony that Miller was arrested in part because of the object detected during the illegal **Terry** frisk. **See id.** at 22, 35; **see also** Aff. of Prob. Cause, at 2.

One trooper testified that Miller was arrested in part because of the object detected during the **Terry** frisk. **See** N.T., 6/25/24, at 22. In response, to defense counsel's question whether Miller was arrested for resisting arrest, this trooper answered "Due to the detention and the uncooperate[sic]--- uncooperativeness and due to the items, again, that were located on his person and him claiming them to be his penis. Um, which was obviously not." **Id.** at 22. Further, the other trooper testified and stated in the affidavit of probable cause that he told Miller that Miller "would be transported back to PSP Franklin for further investigation of what the box was containing inside his pants[.]" **Id.** at 35; **see also** Aff. of Prob. Cause, at 2. Therefore, the Commonwealth failed to establish that the evidence recovered during the search incident to arrest was not obtained via exploitation of the illegal **Terry** frisk.

In sum, the suppression court erred in concluding that the troopers unlawfully asked Miller out of the vehicle and placed him under investigative detention. The troopers asked Miller out of the vehicle during a lawful traffic

---

[7] Based on its review of the MVR footage, the suppression court did not observe any "sudden shift or move of aggression toward the officers[,]" and found that Miller's actions did not rise to the level of resisting arrest. 1925(a) Opinion, at 2-3.

stop and had reasonable suspicion that criminal activity was afoot. However, the **Terry** frisk of Miller was illegal because there were no articulable facts that Miller was armed and dangerous. Further, although we commend the Commonwealth's well written argument to the contrary, there is no support in the record for the Commonwealth's assertion that drugs and drug paraphernalia fell out of Miller's pants during the lawful investigative detention before Miller was arrested. Instead, the record establishes that drugs and drug paraphernalia fell out Miller's pants after he was arrested. Lastly, the Commonwealth failed to meet its burden that Miller's arrest and search incident to arrest were not tainted by the illegal **Terry** frisk. Therefore, we affirm the suppression court's judicious decision in that regard.

Accordingly, the suppression court's order is reversed in part to the extent that it suppressed any evidence obtained before the **Terry** frisk, and the portion of the suppression court's order suppressing evidence obtained after the unlawful **Terry** frisk is affirmed.

Order affirmed in part and reversed in part. Case remanded in accordance with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/14/2025