J-S33037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIK ANDERSON | : | |
| | : | |
| Appellant | : | No. 2179 EDA 2024 |

Appeal from the PCRA Order Entered August 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011782-2013

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:           **FILED DECEMBER 9, 2025**

Malik Anderson ("Anderson") appeals pro se from the order, entered in the Court of Common Pleas of Philadelphia County upon remand from this Court, denying his first petition for relief under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

We set forth a thorough review of the facts in our decision denying Anderson's direct appeal.  ***See Commonwealth v. Anderson***, 209 A.3d 1070, 2019 WL 691357 (Pa. Super. 2019) (non-precedential decision).  We summarize only the facts and procedural history pertinent to our decision here.  On August 19, 2013, construction workers discovered the body of Daquan Crump ("Crump").  Anderson was not the initial suspect, as Crump's

---

[1]  42 Pa.C.S. §§ 9541-9546.

sister, Naiesha, told police on August 20, 2013, that a Facebook account using the name "Quil Banga" had been threatening her brother.[2] She also provided contact information for Anderson, who was friends with Crump. That same day, members of the City of Philadelphia's Homicide Unit asked Anderson to come speak with them, and Anderson's parents transported him[3] to the station at approximately 12:30 p.m. Detectives did not read Anderson his ***Miranda***[4] rights, explaining at the suppression hearing that they considered him an informational witness at that time. Anderson remained at the police station overnight, and at approximately 5:20 p.m. the next day, he gave a formal exculpatory account, saying that he, Crump, Ryan Farrell ("Farrell"), James Thompson ("Thompson"), and Darrell Holmes ("Holmes"), were together at Anderson's home on the evening of Crump's murder and parted ways with Crump around midnight. He denied any involvement in the killing. Farrell, Thompson, and Holmes ultimately provided information linking Anderson to the murder.

On August 28, 2013, the authorities arrested Anderson, who confessed to killing Crump after waiving his ***Miranda*** rights. He also admitted that he met with Farrell, Thompson, and Holmes, to make sure they all told the same

---

[2] "Quil Banga" was later identified as Jharquil Sirrieah-Mean, and authorities ruled him out as a suspect.

[3] Anderson was nineteen years old.

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

story. Anderson unsuccessfully sought to suppress all statements made on both interview dates. A jury convicted Anderson of, inter alia, first-degree murder and the trial court imposed the mandatory term of life in prison without parole.

On direct appeal, we agreed with Anderson that his formal statement given on August 21, 2013, which was used at trial to show consciousness of guilt, should have been suppressed as Anderson had been subjected to custodial interrogation and was not given *Miranda* warnings. *See Anderson*, 2019 WL 691357, at *6. We held that the error was harmless beyond a reasonable doubt, however, because Farrell provided "substantially similar" information to police "and Farrell's statement was properly introduced into evidence." *Id.*

Anderson thereafter sought collateral review, raising multiple claims of ineffective assistance of counsel. Relevant to the current appeal is his assertion that trial counsel ineffectively failed to seek suppression of the derivative evidence obtained after his first police statement. The basis for that claim was our decision on direct appeal concluding that Anderson's statement was inadmissible. Specifically, Anderson argued that the bulk of the Commonwealth's evidence against him was derived from his initial interview, with Anderson contending that the list of names he provided to the authorities formed the basis for the subsequent search warrants, recovery of evidence, and ultimately, his confession. In other words, but for his

inadmissible statement, police would have remained ignorant of those witnesses and would not have learned his role in the crime.[5]

The PCRA court rejected all claims without an evidentiary hearing. On appeal, we affirmed that order except for his claim of counsel's ineffectiveness related to the suppression motion. The PCRA court had "rejected Anderson's suppression claim on the basis that counsel did, in fact, file a motion to suppress." *Commonwealth v. Anderson*, 272 A.3d 508, 2022 WL 260455, *6 (Pa. Super. 2022) (non-precedential decision). Thus, the PCRA court did not address the distinct question of whether counsel ineffectively failed to "seek suppression of the substantial evidence the police derived from Anderson's initial and unconstitutional statement he gave to police[.]" *Id.* at *7. We therefore remanded the matter for an evidentiary hearing, as "we [we]re unable to say that there is no genuine issue of material fact regarding this claim or that Anderson is not entitled to relief on the basis of counsel's failure to seek a motion to suppress the derivative evidence obtained from the unconstitutionally-coerced statement." *Id.* at *6.

The PCRA court held the remand hearing on July 25, 2023. Anderson, who had waived his right to counsel, argued that our decision on direct appeal

---

[5] As summarized in Anderson's brief: "[A]fter first interviewing [Anderson] detectives subsequently interviewed Farrell, Holmes, and Thompson; and due to that evidence detectives obtained the search warrant for [Anderson]'s home and recovered the firearm; and due to that evidence the detectives obtained the arrest warrant, arrested [Anderson] and obtained an alleged confession." Anderson's Brief at 38-39 (citations omitted).

held that his "initial statement … had been a product of an unconstitutional interrogation." N.T., 7/5/2023, at 9. He introduced the summary of his signed written statement from August 21, 2013, and read the question, "Tell us about the last time you had seen [Crump] alive?" to which he had replied, "I think it was around midnight. He was at my house with our friends, Ryan Farrell[,] … Darrell Holmes, and … James Thompson." *Id.* at 14 (quoting exhibit). Anderson argued that this "is the first time [Anderson] identified material witnesses whom the detectives had no knowledge of prior to asking this question." *Id.* Because that interrogation was deemed in violation of his rights, Anderson argued that counsel "should have motioned to suppress the identification[,] all testimony of [] Farrell, [] Holmes, and [] Thompson as fruits of the poisonous tree." *Id.* He added that a firearm recovered from his home during the execution of a search warrant was likewise tainted by the inadmissible statement.

The PCRA court denied relief, reasoning, in pertinent part, that the Commonwealth would have obtained all the identified information from other sources without the inadmissible statement. Anderson timely filed a notice of appeal. He raises seven issues for our review:

1. Did the PCRA [c]ourt err in not finding [t]rial [c]ounsel ineffective for counsel's failure to motion to suppress all the evidence derived from [Anderson]'s unconstitutional custodial interrogation and statement?

2. Did the PCRA [c]ourt err in finding prosecutors presented an independent source/inevitable discovery that was not truly independent of the tainted evidence and police/investigation

team as required by Pa. Const. Art. l § 8 and ***Commonwealth v. Melendez***, … 676 A.2d 226 ([Pa. 1996],), where [Anderson] [in]voked the additional protections during the evidentiary hearing?

3. Did the PCRA [c]ourt violate due process and err ruling in conflict with ***Nix v. Williams***, 467 U.S. 431 [(1984),] and Pa.R.Crim.P. 581(H), where the prosecution did not prove or allege ALL the challenged evidence was obtained lawfully by a preponderance of the evidence?

4. Did the PCRA [c]ourt err in finding prosecutors presented an independent source ruling in conflict with ***Commonwealth v. Henderson***, … 47 A.3d 797 [(Pa. 2012),] and ***Murray v. United States***, 487 U.S. 533 [(1988),], where … [Anderson]'s unconstitutional statements prompted and were used as probable cause to obtain the search warrant for [Anderson]'s home?

5. Did the PCRA [c]ourt err and violate [Anderson]'s confrontation rights where the court allowed the prosecution to use as evidence against … [Anderson] the statements of witness Sirrieah-Mean Jharquil, where the prosecution did not present the witness, the witness never testified under oath, and the defense presented the statement under the limited police course of conduct exception and not for the truth of the matters asserted?

6. Did the PCRA [c]ourt err and violate [Anderson]'s confrontation rights where the court allowed the prosecution to use as evidence against … [Anderson] the alleged out of court statement of Darrell Holmes while the witness testified under oath that lead Detective Griffin fabricated the statements, assualted [sic] him, coerced him, and witness did not sign or adopt the statement?

7. Did the PCRA [c]ourt err in not finding prosecutorial misconduct where the [p]rosecutors … committed fraud upon the court, arguing witness Niesha Crump testified consistently with her out of court statement while her in court testimony negates the prosecution's entire independent source theory and she did not adopt the statement?

Anderson's Brief at 3-4.

Anderson's claims are based upon two overarching issues. The first is whether the PCRA court erroneously rejected his claim of ineffective assistance of trial counsel for failing to seek suppression of all evidence obtained as the fruit of his first, inadmissible statement. The second is whether the PCRA court erred in overruling several of Anderson's objections to the Commonwealth's arguments and evidence introduced during the PCRA hearing. For the following reasons, we conclude that the PCRA court correctly rejected the PCRA claim, albeit on an alternative basis.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Wilson*, 273 A.3d 13, 18 (Pa. Super. 2022) (citations omitted). We "may affirm a PCRA court's order on any legal basis." *Commonwealth v. Parker*, 249 A.3d 590, 595 (Pa. Super. 2021) (citation omitted).

Counsel is presumed to have rendered effective assistance. *See generally Strickland v. Washington*, 466 U.S. 668 (1984). To overcome that presumption, the petitioner must plead and prove that: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citation omitted).

"[W]here a defendant alleges that counsel ineffectively failed to pursue a suppression motion, the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious." *Commonwealth v. Johnson*, 179 A.3d 1153, 1160 (Pa. Super. 2018). If the motion would have been meritorious, we then examine whether the failure to file the motion caused prejudice. *Id.*

Anderson's argument is primarily based on our direct appeal decision deeming his first statement inadmissible. He argues that "counsel failed to challenge or motion to suppress all the evidence which derived from the unconstitutional custodial interrogation and statement. Thus, [Anderson] suffered prejudice where all the evidence presented during trial derived from an illegal, coercive, custodial interrogation." Anderson's Brief at 22.

Anderson's ineffectiveness claim hinges on the notion that the fruit of the poisonous tree doctrine required suppression of everything the police learned from his initial interview. We begin with a brief overview of that doctrine. The exclusionary rule applies not only to illegally obtained evidence, but also the "'fruit' of unlawful government conduct," that was "derived from the primary evidence." *Nix v. Williams*, 467 U.S. 431, 441 (1984) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920)). The fruit of the poisonous tree doctrine "has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). But its

- 8 -

application is not limited to physical evidence. *See, e.g.*, *United States v. Ceccolini*, 435 U.S. 268, 274–75 (1978) (rejecting "a *per se* rule that the testimony of a live witness should not be excluded at trial no matter how close and proximate the connection between it and a violation of the Fourth Amendment").

*Miranda* warnings are required "when a defendant is subject to a custodial interrogation[.]" *Commonwealth v. Seeney*, 316 A.3d 645, 649 (Pa. Super. 2024). The warnings are required due to "the inherently coercive nature of police custodial interrogation[.]" *Commonwealth v. Lyons*, 79 A.3d 1053, 1066 (Pa. 2013). A voluntary interaction can transform into a custodial interrogation based on the totality of the circumstances. *Commonwealth. v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (en banc) ("[P]olice detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.").

Typically, violations of *Miranda* do not require the suppression of anything other than the statement in the case-in-chief. As our Supreme Court has recognized, the United States Supreme Court has held that "under the Fifth Amendment to the United States Constitution, … a statement made by a criminal defendant during a custodial interrogation who has not been apprised of the warnings required by *Miranda* … generally must be suppressed." *Commonwealth v. Bishop*, 217 A.3d 833, 835–36 (Pa. 2019) (citations

omitted). A **Miranda** violation alone, however, does not require the suppression of fruits discovered as a result of un-**Mirandized** statements. **Id.** Whereas the United States Supreme Court has "traditionally mandated a broad application of the 'fruits' doctrine" for violations of the Fourth Amendment, **Oregon v. Elstad**, 470 U.S. 298, 306 (1985), the same is not true of **Miranda** violations. **Id.** at 307 ("[T]he **Miranda** presumption … does not require that the statements and their fruits be discarded as inherently tainted."). **Id.** Fruits of actually compelled statements, however, are subject to suppression. **See United States v. Hubbell**, 530 U.S. 27, 38 (2000) (stating that the Fifth Amendment privilege "protect[s] against the prosecutor's use of incriminating information derived directly or indirectly from … compelled testimony"). In this regard, a coercive environment necessitating **Miranda** warnings differs from a statement that is actually coerced.

Statements obtained in violation of the **Miranda** safeguards are thus excluded as presumptively involuntary, but this does **not** mean that the statement was truly involuntary. **See Elstad**, 470 U.S. at 310 ("The failure of police to administer **Miranda** warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised."). The "**Miranda** exclusionary rule … serves the Fifth Amendment

and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation." *Id.* at 306.

Because the scope of the exclusionary remedy applicable to the violation identified on direct appeal turns on the nature of the violation, we now address the nature of our decision on direct appeal. Our review of that decision reflects that the prior panel determined only that the police violated Anderson's procedural *Miranda* rights. This conclusion is based, in part, on Anderson's argument on direct appeal, which was limited to a *Miranda* violation: "Did the [trial] court err in denying [Anderson's] Motion to Suppress his first statement where [Anderson] was not issued *Miranda* warnings and was held in custody for nearly 30 hours before the statement was obtained?" *Anderson*, 2019 WL 691357 at *3 (non-precedential decision) (cleaned up). Anderson did not claim that his statement was involuntary, but that the coercive nature of his time at the police station constituted the functional equivalent of an arrest such that *Miranda* warnings were required. The prior panel concluded that "the trial court's determination that [Anderson] was not 'in custody' is not supported by the record and is erroneous," because "the police physically and psychologically deprived [Anderson]'s freedom of movement and choice in a significant way, which constituted a custodial interrogation that was coercive and intimidating." *Anderson*, 2019 WL 691357, at *6. Specifically, it observed:

> Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so

coercive as to constitute the functional equivalent of arrest are: the basis for the detention; the location; whether the suspect was transported against his will; how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

*Id.* at *4 (quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 579-80 (Pa. Super. 2001)). As to the factual findings relevant to those matters, the panel stated:

> [Anderson] was detained for nearly thirty hours and only saw police officers during that time. [Anderson] was not permitted to go to the restroom alone and was provided only with water during his detention. [Anderson] expressed a desire to leave but was told it "doesn't work like that." Accordingly, the trial court's determination that [Anderson] was not "in custody" is not supported by the record and is erroneous.

*Id.* (citation omitted).

As indicated by our analysis, Anderson did cite and discuss coercion, but only in connection with his claim that the circumstances were coercive to the degree that *Miranda* warnings were required. As previously explained, the conclusion that the totality of the circumstances was sufficiently coercive such that the *Miranda* prophylactic warnings must be given is not equivalent to a finding that the statement itself was coerced in violation of Anderson's constitutional rights. Therefore, Anderson was only entitled to suppression of the formal statement he gave to police, not the information and evidence discovered as a result of that statement.

Even if the prior panel did decide on direct appeal that his formal statement was made in violation of his Fifth Amendment rights, he still is not

- 12 -

entitled to relief. As the burden to prove that the motion would have succeeded rests with Anderson, *Johnson*, 179 A.3d at 1160, he was required to plead and prove by a preponderance of the evidence that his disclosure of Farrell's name was not an "essentially free and unconstrained choice" on his part. *See Commonwealth v. Alston*, 317 A.2d 241, 243–44 (Pa. 1974) (citation omitted). He has failed to do so. Although framed in terms of the inevitable discovery doctrine, we agree with the Commonwealth that Anderson voluntarily disclosed the names of his friends before any form of coercion occurred.

> In any event, another source of the information in [Anderson]'s August 21st statement was [Anderson] himself. [Anderson] voluntarily came to the police station the day before, eager to portray himself as someone who was aiding the investigation of his friend's murder. He described his comings and goings with the victim - up until a few hours before the murder - and supplied the names of Farrell, Holmes, and Thompson.

Commonwealth's Brief at 15 (emphases and citations omitted).

Anderson responds in his reply brief that upon arrival he "was immediately subjected to a coercive custodial interrogation on August 20[.]" Anderson's Reply Brief at 4. He fails to address the fact that, by his own admission, he went to the station to assist with the investigation. *See* N.T., 10/8/14, at 32 ("I was pretty much there to help."). The record establishes that, in an effort to "help," Anderson provided Detective Griffin with "background information on himself as well as his relationship with the decedent." N.T., 10/6/14, at 11. Detectives kept Anderson at the station to

investigate the information Anderson supplied. *Id.* at 42 ("Q. And what information did [Anderson] supply to you that you had to verify? A. Locations that he went to, persons that he was with, things of that nature."). As Detective Griffen testified, this information, provided on August 20 when Anderson voluntarily came to the station, included, inter alia, Farrell's name, as reflected in his notes from that day:

Q. Detective, did you have time to look through [your] case file on this matter?

A. Yes.

Q. And were you able to retrieve the notes?

A. Yeah. The information I have is a 229 was done on the 20th, 8/20/13. That was completed. And then --

Q. And a 229, for the record, is just biographical information?

A. Yes, exactly. Correct.

Q. Okay.

A. Then we also have a couple notes regarding James Thompson, Darrell Holmes, and Ryan Farrell, nicknames, phone numbers, things of that nature supplied by [] Anderson.

Q. All right. Well, that's certainly not the information you were talking about that needed to be checked out, was it?

A. Sure it is. **It's the names of the people he was with**.

Q. Okay. So my question is this: The defendant tells you informally who he was with.

A. Yes.

Q. And then you wanted to check that out, correct?

A. Yes.

Q. And obviously, that took quite sometime to verify, correct?

A. Yes.

- 14 -

***Id.*** at 43-44 (emphasis added).

The point of this exchange was to explain why Anderson was at the police station for as long as he was and to establish that Detective Griffin could have simply let Anderson go home while the police corroborated the information. However, it also establishes that Anderson revealed the "names of the people he was with" early in his conversation with the detective.

We do not minimize the fact that Anderson was kept at the station for approximately thirty hours and was not offered food, water, or sleeping arrangements. But it does not follow that law enforcement is forever barred from relying on information Anderson voluntarily supplied before the police erred. Although Anderson's interaction with police ripened into a custodial interrogation based upon him being held at the station for thirty hours, without any sustenance, it began as a voluntary encounter. It was during this voluntary encounter that Anderson provided police with Farrell's name, which, as stated above, rendered the admission of his formal statement given on August 21 harmless error.

Thus, even accepting for purposes of argument that the formal August 21 statement was truly coerced,[6] that conclusion does not retroactively alter

_____

[6] Our remand decision did not decide this question. We simply granted the Commonwealth's request for a remand and therefore did not perform any analysis of whether the fruit of the poisonous tree doctrine applied to the ***Miranda*** violation.

the character of his earlier, voluntary actions. Anderson bears the burden of establishing all elements of his ineffectiveness claim. We conclude, as a matter of law, that a motion to suppress the fruits of his statement given on the 21st lacks arguable merit. *See Commonwealth v. Urwin*, 219 A.3d 167, 172–73 (Pa. Super. 2019) ("Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.") (citation omitted). On this basis, we affirm the PCRA court's decision to deny Anderson relief. [7]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/9/2025

---

[7] Having concluded that the fruit of the poisonous tree doctrine does not apply, we decline to address the conclusion by the PCRA court that either the independent source or inevitable discovery doctrines applied. Similarly, we need not discuss Anderson's various arguments regarding the Commonwealth's invocation of those doctrines at the evidentiary hearing.